Filed 1/25/16  Bagheri v. Adeli-Nadjafi CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| EBRAHIM BAGHERI et al., <br><br> Cross-Defendants and Appellants, <br><br> v. <br><br> NAZILA ADELI-NADJAFI, <br><br> Cross-Complainant and Respondent. | B255407 <br><br> (Los Angeles County <br> Super. Ct. No. PC047981) |

APPEAL from an order of the Superior Court of Los Angeles County, Melvin D. Sandvig, Judge.  Affirmed.

Brian J. Jacobs for Cross-Defendants and Appellants.

Mohammed K. Ghods and William A. Stahr for Cross-Complainant and Respondent.

————————————

**INTRODUCTION**

Ebrahim Bagheri and Ghamar Fazlelahi sued their neighbor Nazila Adeli-Nadjafi and others in an attempt to remedy excessive noise and disturbances in their neighborhood. After Adeli-Nadjafi filed a cross-complaint for defamation, nuisance, and other claims, Bagheri and Fazlelahi filed a special motion to strike the cross-complaint under Code of Civil Procedure section 425.16.[1] The trial court granted the motion in part and denied it in part, and Bagheri and Fazlelahi appealed the portion of the order denying their special motion to strike. We conclude that, even in the unlikely event Bagheri and Fazlelahi made a threshold showing that the remaining causes of action in the cross-complaint arise from protected activity, Adeli-Nadjafi met her minimal burden of showing a probability of prevailing on those causes of action, and that the *Noerr-Pennington* doctrine does not bar those causes of action as a matter of law. Therefore, we affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

A. *The Complaint and Cross-Complaint*

In May 2005 Bagheri and Fazlelahi, who are husband and wife, bought a home in Tanterra, a gated Calabasas neighborhood, after the resident manager had assured them that Tanterra was a quiet place. Shortly after moving in, however, Bagheri and Fazlelahi discovered that their neighbors, especially Adeli-Nadjafi, her husband, and their children, were loud and rowdy. According to Bagheri and Fazlelahi, Adeli-Nadjafi and her family held parties right outside Bagheri and Fazlelahi's bedroom and living room, played football and basketball every day until late in the evening, and parked their cars in no-parking zones in front of Bagheri and Fazlelahi's home. Bagheri and Fazlelahi

---

[1] Undesignated statutory references are to the Code of Civil Procedure.

2

complained to the resident manager, after which things quieted down for several months. Eventually, Tanterra became noisy again.

Over the next two to three years, Bagheri and Fazlelahi made numerous, unsuccessful efforts to address their unhappy situation, including speaking with employees of Tanterra's governing body, the Tanterra Condominium Association (Tanterra Association or Association), and the company that managed Tanterra, Fidelity Management Services (Fidelity). Bagheri also sent Adeli-Nadjafi, his "primary offending neighbor," a letter outlining her family's improper conduct and asking that she stop it. During one particularly raucous neighborhood party, Bagheri and Fazlelahi called the Sheriff's Department. A Sheriff's deputy took a report and told the neighbors to quiet down. Still, the trouble continued.

In April 2009 Fazlelahi sent a letter to Dana Blatt, the Tanterra Association's Chief Executive Officer, summarizing the history of her and her husband's difficulties with their neighbors, as well as their unsuccessful attempts to have the Association and Fidelity address the problem. The letter stated that "[t]he noise and disturbances constitute a nuisance under California Civil Code §§ 3479 and 3481," and that Fazlelahi was "prepared to institute legal action for all of [her] damages" against the Association and Fidelity. The letter also threatened to file a lawsuit in Los Angeles Superior Court if Blatt or his legal representative did not respond within 15 days. Over the next several months, Bagheri and Fazlelahi exchanged written communications with the Tanterra Association and Fidelity regarding the circumstances at Tanterra.

In June 2009 Bagheri and Fazlelahi again called the Sheriff's Department in response to a loud party at the home of Adeli-Nadjafi. This time, observing the approach of the deputy's vehicle, the party-goers stopped their behavior and feigned innocence, so that upon arrival the deputy found no disturbance. When the deputy left, the party resumed and became even louder than before. The next day, Bagheri went in person to the Sheriff's Department, where he discussed the situation with two deputies. They recommended that Bagheri videotape his neighbors' activities so that he would have a

record of their conduct. Following this advice, Bagheri installed two video cameras on the front of his house.

Meanwhile, Bagheri and Fazlelahi's dispute with their neighbors only worsened, and in April 2010 Bagheri and Fazlelahi filed this action. The operative second amended complaint asserted causes of action for breach of contract against the Tanterra Association, misrepresentation and an accounting against the Tanterra Association, Fidelity, and Dana Blatt, and intentional infliction of emotional distress, negligence, and nuisance against all of the defendants, including Adeli-Nadjafi and her husband.

In August 2011 Adeli-Nadjafi filed a cross-complaint against Bagheri and Fazlelahi. Adeli-Nadjafi alleged that for three years Bagheri and Fazlelahi had been following her and her family with cameras to harass and intimidate them, and surreptitiously recorded her and her family on their property whenever Bagheri and Fazlelahi observed that the children were playing or the family had guests. Adeli-Nadjafi alleged that Bagheri and Fazlelahi had "embarked on a campaign of harassment designed to invade the privacy of [Adeli-Nadjafi and her family], to dissuade them from going outside, and to intimidate [Adeli-Nadjafi's] children from playing outside, even on [Adeli-Nadjafi's] own property." Adeli-Nadjafi also alleged that Bagheri and Fazlelahi made false statements to third parties that Adeli-Nadjafi had broken the law. Adeli-Nadjafi asserted causes of action for invasion of privacy, intentional infliction of emotional distress, defamation, and nuisance.

B.     *The Special Motion to Strike the Cross-Complaint*

Bagheri and Fazlelahi filed a special motion to strike pursuant to section 425.16 and a demurrer to the cross-complaint.[2] The court granted the special motion to strike

---

[2]     Bagheri and Fazlelahi originally filed the motion in November 2011. After the trial court denied the motion as untimely, Bagheri and Fazlelahi appealed. This court reversed with directions to allow the parties to brief the motion on the merits. (See *Bagheri v. Adeli-Nadjafi* (Mar. 29, 2013, B239551) [nonpub. opn.].)

4

Adeli-Nadjafi's cause of action for defamation, determining that the only basis for this claim was the statement in Fazlelahi's April 2009 letter to Dana Blatt that the disturbances at Tanterra violated Civil Code sections 3479 and 3481. The court ruled that this letter qualified as protected prelitigation activity under section 425.16, subdivision (e), because it stated Fazlelahi's intention to file suit if the issues she was complaining about were not resolved. The court also found that, because the letter constituted a prelitigation communication that was absolutely privileged under Civil Code section 47, subdivision (b), Adeli-Nadjafi had not shown a probability of prevailing on her defamation claim. Bagheri and Fazlelahi do not appeal this ruling.

The court denied the special motion to strike the remainder of Adeli-Nadjafi's causes of action. The court noted that the gravamen of these claims was Bagheri and Fazlelahi's alleged surreptitious surveillance of Adeli-Nadjafi and her family, which the court ruled did not qualify as protected prelitigation activity, as Bagheri and Fazlelahi argued. The court noted that, although Bagheri and Fazlelahi contended they began videotaping Adeli-Nadjafi and her family in 2009 as a prelitigation investigation measure recommended by Sheriff's deputies, Bagheri and Fazlelahi's discovery responses stated that they began taking photographs and videos of Adeli-Nadjafi and her family as early as 2006.[3] The court also found that, even if Bagheri and Fazlelahi had met their burden of demonstrating that the video recording and photographing were protected under section 425.16, Adeli-Nadjafi had met her burden of showing a probability of success on the merits of her claims. The court observed that, at a minimum, there were questions of fact about how and when Bagheri and Fazlelahi had videotaped Adeli-Nadjafi and her family. The court stated that, if the videotaping occurred before Bagheri and Fazlelahi considered litigation or as a means of harassment rather than prelitigation investigation, Adeli-

---

[3]     The court also noted that, while Bagheri and Fazlelahi claimed that the videotaping did not begin until 2009, they did not dispute that they began taking photographs of Adeli-Nadjafi and her family in 2006.

5

Nadjafi would probably succeed on her non-defamation claims. Bagheri and Fazlelahi timely appeal[4] this ruling.[5]

## DISCUSSION

A. *Applicable Law and Standard of Review*

"Section 425.16, subdivision (b)(1), provides: 'A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim.' The analysis of an anti-SLAPP motion thus involves two steps. 'First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one "arising from" protected activity. (§ 425.16, subd. (b)(1).) If the court finds such a showing has been made, it then must consider whether the plaintiff has demonstrated a probability of prevailing on the claim.' [Citation.] 'Only a cause of action that satisfies *both* prongs of the anti-SLAPP statute—i.e., that arises from protected speech or petitioning *and* lacks even minimal merit—is a SLAPP, subject to being stricken under the statute.' [Citation.]" (*Oasis West Realty, LLC v. Goldman* (2011) 51 Cal.4th 811, 819-820; accord, *Bikkina v. Mahadevan* (2015) 241 Cal.App.4th

---

[4] Because neither the superior court clerk nor any party served a document entitled "Notice of Entry" of judgment or a file-stamped copy of the judgment, Bagheri and Fazlelahi had 180 days from the date of entry of the order denying in part their special motion to strike. (See Cal. Rules of Court, rule 8.104, subd. (a)(1)(C).) Bagheri and Fazlelahi filed their notice of appeal 150 days after entry of that order.

[5] The court took the demurrer to Adeli-Nadjafi's cause of action for defamation off calendar as moot and overruled the demurrer to the remaining causes of action. That order is not appealable. (See *Regents of University of California v. Superior Court* (2013) 220 Cal.App.4th 549, 557.)

6

70, 80 (*Bikkina*).)  The defendant has the burden of proof on the first issue; the plaintiff has the burden on the second issue.  (*Greene v. Bank of America* (2015) 236 Cal.App.4th 922, 929, fn. 4.)

We review an order denying a special motion to strike under section 425.16 de novo.  (*Public Employees' Retirement System v. Moody's Investors Service, Inc.* (2014) 226 Cal.App.4th 643, 657.)  "In doing so, we consider the pleadings and the evidence offered in support of and in opposition to the motion, but we do not consider the credibility of witnesses or the weight of the evidence."  (*Ibid.*)

B.	*Even If Adeli-Nadjafi's Remaining Causes of Action Arise from Protected Activity, She Demonstrated a Probability of Prevailing*

On the first prong of the section 425.16 analysis, Bagheri and Fazlelahi contend that Adeli-Nadjafi's causes of action for invasion of privacy, nuisance, and intentional infliction of emotional distress arise from Bagheri and Fazlelahi's video recording of Adeli-Nadjafi and her family, which Bagheri and Fazlelahi argue is a protected activity under section 425.16, subdivision (e)(1).  Bagheri and Fazlelahi argue that their video recording qualifies as a "written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law" under section 425.16, subdivision (e)(1), because a video recording qualifies as a "writing" under Evidence Code section 250 and they made their recording in anticipation of litigation.  (See Evid. Code, § 250 ["'[w]riting' means  . . . photographing . . . and every other means of recording upon any tangible thing, any form of communication or representation, . . . and any record thereby created"].)

We have serious doubts whether Bagheri and Fazlelahi's video recording is a protected activity under section 425.16, subdivision (e)(1).  The definition of a "writing" they cite is specific to the Evidence Code:  "Unless the provision or context otherwise requires, these definitions govern the construction of this code."  (Evid. Code, § 100.)  The definition of "writing" in the Code of Civil Procedure, however, is much narrower.  (See § 17, subd. (a) ["writing includes printing and typewriting"].)  More importantly, the

7

structure and language of section 425.16, subdivision (e), suggest that subdivision (e)(1) protects only statements, writings, and other "communicative acts," whereas noncommunicative conduct must be evaluated under subdivision (e)(4). (*Finton Construction, Inc. v. Bidna & Keys, APLC* (2015) 238 Cal.App.4th 200, 210.) "'Under the plain language of section 425.16, subdivisions (e)(1) and (2), as well as the case law interpreting those provisions, all communicative acts performed by attorneys as part of their representation of a client in a judicial proceeding or other petitioning context are per se protected as petitioning activity by'" section 425.16. (*Ibid.*; see *Cabral v. Martins* (2009) 177 Cal.App.4th 471, 480.) In contrast, subdivision (e)(4) protects "any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." (See *Old Republic Construction Program Group v. Boccardo Law Firm, Inc.* (2014) 230 Cal.App.4th 859, 874 ["'only one of the four categories of protected activity covers [noncommunicative] conduct (§ 425.16, subd. (e)(4) . . .)'"].) Adeli-Nadjafi's claims generally arise not from the presentation of the contents of Bagheri and Fazlelahi's video recording, which, depending on the circumstances, might be a communicative act, but from the activity of making the video recording, which is noncommunicative conduct.

The California Supreme Court has recognized the distinction between communicative acts and noncommunicative conduct in the context of the litigation privilege under Civil Code section 47, subdivision (b), which applies to a "publication or broadcast" made in the course of a judicial proceeding. (See *Kimmel v. Goland* (1990) 51 Cal.3d 202, 209-212 (*Kimmel*).) In *Kimmel* the Supreme Court distinguished making a surreptitious recording, which is not protected by the litigation privilege, and publishing, broadcasting, or otherwise disclosing the contents of that recording, which may be protected. (See *Kimmel* at pp. 209-212.) The Supreme Court stated that the distinction between "communicative acts" and "noncommunicative conduct" has "traditionally served as a threshold issue" in determining whether the litigation privilege applies. (*Id.* at p. 211.) Because the Supreme Court has analyzed the scope of section

8

425.16, subdivision (e)(1) and (e)(2), by referring to the litigation privilege in Civil Code section 47, subdivision (b), the distinction between communicative and noncommunicative acts is an appropriate consideration in determining whether an activity is protected under subdivision (e)(1). (See *Flatley v. Mauro* (2006) 39 Cal.4th 299, 322-323 ["[p]ast decisions of this court and the Court of Appeal have looked to the litigation privilege as an aid in construing the scope of section 425.16, subdivision (e)(1) and (2)"]; *Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1115 ["'communications preparatory to or in anticipation of the bringing of an action or other official proceeding are within the protection of the litigation privilege of Civil Code section 47, subdivision (b) [citation], [and] such statements are equally entitled to the benefits of section 425.16'"].)

The parties, however, did not address this issue in their briefs, and we do not need to decide it in this case because, even if Bagheri and Fazlelahi met their burden under prong one, Adeli-Nadjafi met her burden under prong two of demonstrating a probability of prevailing on her claims. (See *Southern Cal. Gas Co. v. Flannery* (2014) 232 Cal.App.4th 477, 485 [proceeding directly to second step of section 425.16 analysis because probability that plaintiff would prevail on the merits of the action was adequate basis for affirming the trial court]; *Hardin v. PDX, Inc.* (2014) 227 Cal.App.4th 159, 166 [finding no need to answer the "interesting question" of whether plaintiff's claims arose from defendant's protected activity because plaintiff's evidence was sufficient to support a favorable judgment].)

### 1. *Adeli-Nadjafi's Remaining Claims Have Minimal Merit*

To establish the "probability of prevailing" requirement of the second prong of the section 425.16 analysis, a plaintiff (or, as here, a cross-complainant) "'"must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by [the plaintiff] is credited."' [Citation.]" (*Nunez v. Pennisi* (2015) 241 Cal.App.4th 861, 872.) The plaintiff need only establish that his or her claims have "'"minimal merit."'" (*Ibid.*;

9

see *Stenehjem v. Sareen* (2014) 226 Cal.App.4th 1405, 1414 [the standard is "'similar to that employed in determining nonsuit, directed verdict or summary judgment motions'"].) Indeed, "the plaintiff's burden of establishing a probability of prevailing is not high: We do not weigh credibility, nor do we evaluate the weight of the evidence. Instead, we accept as true all evidence favorable to the plaintiff and assess the defendant's evidence only to determine if it defeats the plaintiff's submission as a matter of law." (*Overstock.com, Inc. v. Gradient Analytics, Inc.* (2007) 151 Cal.App.4th 688, 699-700; accord, *Southern Cal. Gas Co. v. Flannery*, *supra*, 232 Cal.App.4th at p. 486.)

Adeli-Nadjafi's first cause of action is for invasion of privacy, which, consistent with the gravamen of its supporting allegations, the parties treat as a claim for intrusion.[6] (See *Shulman v. Group W Productions, Inc.* (1998) 18 Cal.4th 200, 214, 230 (*Shulman*) [of the four common law privacy torts recognized by California, "the tort of intrusion . . . is perhaps the one that best captures the common understanding of an 'invasion of privacy'"].) "A privacy violation based on the common law tort of intrusion has two elements. First, the defendant must intentionally intrude into a place, conversation, or matter as to which the plaintiff has a reasonable expectation of privacy. Second, the intrusion must occur in a manner highly offensive to a reasonable person." (*Hernandez v. Hillsides, Inc.* (2009) 47 Cal.4th 272, 286; see *Shulman*, at p. 231 ["'[o]ne who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person'"].) Adeli-

---

[6]    Adeli-Nadjafi pleaded other legal bases for this cause of action, including violation of the California and United States Constitutions, Penal Code section 632, and Civil Code section 1708.8, subdivision (b). She need only establish a probability of prevailing on one theory. (See *Oasis West Realty, LLC v. Goldman*, *supra*, 51 Cal.4th at p. 820 ["'once a plaintiff shows a probability of prevailing on any part of its claim, the plaintiff *has established* that its cause of action has some merit and the entire cause of action stands'"]; *M.G. v. Time Warner, Inc.* (2001) 89 Cal.App.4th 623, 630 [where plaintiffs pleaded various theories of invasion of privacy based on identical facts, "[i]f one theory is adequate, we will uphold denying the motion to strike as to plaintiffs' claims for invasion of privacy"].)

Nadjafi's declaration in opposition to the special motion to strike states that for approximately three years Bagheri and Fazlelahi harassed and intimidated her and her family by, among other things, using strategically placed cameras to videotape and eavesdrop on them without their consent, while Adeli-Nadjafi and her family were on their property and inside their home. This evidence is sufficient to establish minimal merit on both elements of Adeli-Nadjafi's cause of action for invasion of privacy. (See *Shulman*, at pp. 230-231 [tort of intrusion "encompasses unconsented-to physical intrusion into the home . . . as well as unwarranted sensory intrusions such as eavesdropping, wiretapping, and visual or photographic spying"].) Her declaration is not, as Bagheri and Fazelelahi assert, conclusory or "inadequate as a matter of law."

Contrary to Bagheri and Fazlelahi's argument, Adeli-Nadjafi did not have to plead that they physically intruded on her property to engage in the surveillance. An actionable intrusion requires only that the defendant "penetrated some zone of physical or sensory privacy surrounding, or obtained unwanted access to data about, the plaintiff." (*Shulman*, *supra*, 18 Cal.4th at p. 232.) Thus, for example, visual spying, eavesdropping, and even telephone calls to the plaintiff's home may be actionable intrusions, even though those acts do not necessarily physically intrude on the plaintiff's property. (*Id.* at pp. 231-232; see *Masuda v. Citibank, N.A.* (N.D.Cal. 2014) 38 F.Supp.3d 1130, 1134 ["[c]ourts have held that repeated and continuous calls made in an attempt to collect a debt may give rise to a claim of intrusion upon seclusion"]; see also *Wolfson v. Lewis* (E.D.Pa. 1996) 924 F.Supp. 1413, 1433-1434 ["[a]n intrusion upon seclusion [of a home] can be by electronic means such as wiretapping, photography or the use of binoculars"].) The court's decision in *Aisenson v. American Broadcasting Co.* (1990) 220 Cal.App.3d 146, cited by Bagheri and Fazlelahi, is not to the contrary. Although the court in that case held that any invasion of privacy was minimal where a news crew videotaped an elected official as he walked down his driveway, in part because the camera crew filmed the official from across the street and "did not physically encroach on [his] property" (*id.* at pp. 162-163), the court did not hold or suggest that actionable intrusion requires physical intrusion on another's property.

11

Adeli-Nadjafi's second cause of action, for intentional infliction of emotional distress, requires "'"(1) outrageous conduct by the defendant, (2) intention to cause or reckless disregard of the probability of causing emotional distress, (3) severe emotional suffering and (4) actual and proximate causation of the emotional distress."' [Citation.]" (*Bikkina*, *supra*, 241 Cal.App.4th at pp. 87-88.) "To be outrageous, the [defendant's] conduct must be so extreme as to exceed all bounds of that usually tolerated in a civilized community. [Citation.] Mere insults, indignities, threats, annoyances, or petty oppressions are not sufficient. [Citation.]" (*Grenier v. Taylor* (2015) 234 Cal.App.4th 471, 486.) "Shame, humiliation, embarrassment, or anger can constitute emotional distress, but it must be severe and not trivial or transient. [Citation.]" (*Bikkina*, *supra*, 241 Cal.App.4th at p. 88.)

Adeli-Nadjafi carried her burden on the second, third, and fourth elements of this cause of action with evidence that, "[a]s a result of the relentless and long term campaign of harassment by [Bagheri and Fazlelahi]," including the surveillance and eavesdropping, Adeli-Nadjafi did not feel safe in her home, she and her family were unable "to enjoy a normal life," and she suffered from insomnia, headaches, and nausea. (See *Bikkina*, *supra*, 241 Cal.App.4th at pp. 88-89 [plaintiff met second prong under section 425.16 for his cause of action for intentional infliction of emotional distress with evidence that defendant's "campaign" of harassing him over academic research caused him to suffer, among other things, stress, stomach problems, chest pains, and insomnia].) Bagheri and Fazlelahi do not challenge Adeli-Nadjafi's showing on these elements.[7]

Bagheri and Fazlelahi challenge only Adeli-Nadjafi's showing on the first element, arguing that the conduct attributed to them does not, as a matter of law, qualify as "outrageous." Although Adeli-Nadjafi's evidence on this point may not be the

---

[7]     They do contend that the cross-complaint does not allege the second element, i.e., that Bagheri and Fazlelahi intended to cause, or showed reckless disregard of the probability of causing, emotional distress. Adeli-Nadjafi alleges, however, that "Cross-Defendants['] egregious and outrageous conduct as . . . alleged was intentional and . . . Cross-Defendants intended to cause emotional distress to Cross-Complainant . . . ."

12

strongest, she has established that her claim has minimal merit.  (See *Nunez v. Pennisi*, *supra*, 241 Cal.App.4th at p. 872; *Wilbanks v. Wolk* (2004) 121 Cal.App.4th 883, 906 ["[a]n anti-SLAPP-suit motion is not a vehicle for testing the strength of a plaintiff's case," but "a vehicle for determining whether a plaintiff, through a showing of minimal merit, has stated and substantiated a legally sufficient claim"].)  Adeli-Nadjafi's declaration states that for three years, despite her protests, Bagheri and Fazlelahi videotaped and eavesdropped on her family, including her minor children, while she and her family were on their property and inside their home.  Adeli-Nadjafi states that, when she and her family tried to avoid their next-door neighbors, Bagheri and Fazlelahi chased them with hand-held cameras.  She states that Bagheri and Fazlelahi intended this surveillance not only to invade her privacy, but to "make [her] life intolerable" and to deter her and her children from going outside and playing on their property, and that as a result she and her family felt they "live[d] under a state of siege" and "did not feel safe" inside their home.  Adeli-Nadjafi also states that, because Bagheri was a professional film director, she feared he would use the images of her and her family in his film business.  Crediting this testimony, a trier of fact could reasonably find that Bagheri and Fazlelahi's conduct went beyond the "[m]ere insults, indignities, threats, annoyances, or petty oppressions" that a civilized community usually tolerates.  (*Grenier v. Taylor*, *supra*, 234 Cal.App.4th at p. 486; see *Frisby v. Schultz* (1988) 487 U.S. 474, 484 [the home is "'the last citadel of the tired, the weary, and the sick,'" and "'[p]reserving the sanctity of the home, the one retreat to which men and women can repair to escape from the tribulations of their daily pursuits, is surely an important value'"]; *Shulman*, *supra*, 18 Cal.4th at p. 231 [one "'whose home may be entered at the will of another, whose conversations may be overheard at the will of another, whose marital and familial intimacies may be overseen at the will of another  . . . has less human dignity[ ] on that account'"].)

13

Adeli-Nadjafi's final cause of action is for private nuisance, "i.e., a nontrespassory interference with the private use and enjoyment of land." (*San Diego Gas & Elec. Co. v. Superior Court* (1996) 13 Cal.4th 893, 937, citing Civ. Code §§ 3479-3481.) "'In distinction to trespass, liability for nuisance does not require proof of damage to the plaintiff's property; proof of interference with the plaintiff's use and enjoyment of that property is sufficient.'" (*Monks v. City of Rancho Palos Verdes* (2008) 167 Cal.App.4th 263, 302; see *ibid*. ["to proceed on a private nuisance theory the plaintiff must prove an injury specifically referable to the use and enjoyment of his or her land"].) The plaintiff must also prove that the interference with her use and enjoyment of her property was "'*substantial*,'" that is, "'"definitely offensive, seriously annoying or intolerable,"'" and that it was "'"*unreasonable*"'" in its "'"nature, duration or amount."'" (*Id.* at p. 303.) "'"So long as the interference is substantial and unreasonable, and such as would be offensive or inconvenient to the normal person, virtually any disturbance of the enjoyment of the property may amount to a nuisance."'" (*Id.* at p. 302.)

Adeli-Nadjafi satisfied her minimal burden on this claim as well. She states in her declaration that Bagheri and Fazlelahi's three-year campaign of videotaping and eavesdropping on her family caused Adeli-Nadjafi to feel unsafe in her home, caused her and her family to feel they lived "under a state of siege," and prevented them from leading "a normal life." Contrary to Bagheri and Fazlelahi's assertion, Adeli-Nadjafi did not have to plead that they encroached on her property. (See, e.g., *Monks v. City of Rancho Palos Verdes*, *supra*, 167 Cal.App.4th at p. 302 [noting successful actions for private nuisance based on interferences caused by noise, smoke, and noxious odors].) Nor was Bagheri and Fazlelahi's surveillance, as a matter of law, a mere "'"annoyance[ ] consequent upon the reasonable use of property by others."'" (Cf. *Schild v. Rubin* (1991) 232 Cal.App.3d 755, 764 ["'"[p]eople who live in organized communities must of necessity suffer some inconvenience and annoyance from their neighbors and must submit to annoyances consequent upon the reasonable use of property by others"'"].) Adeli-Nadjafi's evidence showed that Bagheri and Fazlelahi conducted their surveillance and pursued Adeli-Nadjafi's family members with cameras, at least in part, merely to

14

harass and intimidate her and her family, and that a reasonable person would find their conduct seriously annoying or intolerable.  (See *Monks v. City of Rancho Palos Verdes*, *supra*, 167 Cal.App.4th at p. 303.)

        2.     *The Noerr-Pennington Doctrine Does Not Bar Adeli-Nadjafi's Remaining Causes of Action*

On a special motion to strike, a defendant may raise an affirmative defense to establish as a matter of law that the plaintiff has failed on prong two to demonstrate a probability of prevailing on his or her claims.  (See *California Public Employees' Retirement System v. Moody's Investors Service, Inc.*, *supra*, 226 Cal.App.4th at p. 674.) "'Generally, a defendant may defeat a cause of action by showing . . . there is a complete defense to the cause of action . . . .' [Citation.]  '[A]lthough section 425.16 places on the plaintiff the burden of substantiating its claims, a defendant that advances an affirmative defense to such claims properly bears the burden of proof on the defense.  [Citation.]' [Citation.]" (*Ibid.*; see *Peregrine Funding, Inc. v. Sheppard Mullin Richter & Hampton LLP* (2013) 133 Cal.App.4th 658, 676; cf. *Bently Reserve LP v. Papaliolios* (2013) 218 Cal.App.4th 418, 434 [the court "should consider whether the defendant's evidence in support of an affirmative defense is sufficient, and if so, whether the plaintiff has introduced contrary evidence, which, if accepted, would negate the defense"].)

Bagheri and Fazlelahi argue that Adeli-Nadjafi cannot show a probability of prevailing on any of her claims because the conduct on which they are based, the surveillance by Bagheri and Fazlelahi of Adeli-Nadjafi and her family, is privileged under the *Noerr-Pennington* doctrine.[8]  The *Noerr-Pennington* doctrine, however, does not apply in this case on this record.

---

[8]    *Eastern R. Presidents Conference v. Noerr Motor Freight, Inc.* (1961) 365 U.S. 127; *United Mine Workers v. Pennington* (1965) 381 U.S. 657.

15

The *Noerr–Pennington* doctrine originated in the antitrust context, but some courts have extended it "to preclude virtually all civil liability for a defendant's petitioning activities before not just courts, but also before administrative and other governmental agencies." (*People ex rel. Gallegos v. Pacific Lumber Co.* (2008) 158 Cal.App.4th 950, 964; see *Sosa v. DIRECTV, Inc.* (9th Cir. 2006) 437 F.3d 923, 929-932 (*Sosa*) [the *Noerr-Pennington* doctrine "arose in the antitrust context and initially reflected the Supreme Court's effort to reconcile the Sherman Act with the First Amendment Petition Clause"]; see also *Premier Medical Management Systems, Inc. v. California Ins. Guarantee Assn.* (2006) 136 Cal.App.4th 464, 479 [on second prong of the section 425.16 analysis the *Noerr-Pennington* doctrine barred the plaintiff's claims for, among other things, violation of RICO and intentional interference with prospective economic advantage].) Whether the *Noerr-Pennington* doctrine applies at all outside the antitrust arena, however, is still an open question to which courts have given different answers. (See, e.g., *Shirokov v. Dunlap, Grubb & Weaver, PLLC* (D. Mass. 2012) 2012 WL 1065578, at *19-20 ["[t]here is some debate . . . as to whether the *Noerr–Pennington* doctrine applies outside of the antitrust field," and "[a] number of courts have acknowledged the incongruity of applying the *Noerr–Pennington* doctrine outside of the antitrust context"]; Dan Fligsten, *Big Doctrine: The U.S. Supreme Court May Ultimately Decide How Far Noerr-Pennington Applies Outside the Antitrust Context*, (Feb. 2014) 36 FEB L.A. Law. 25, 30 ["[t]he issue of whether *Noerr-Pennington* applies outside of the antitrust context remains open to debate"]; Zachary T. Jones, *"Gangster Government": The Louisiana Supreme Court's Decision in Astoria v. Debartolo on the Application of the Noerr-Pennington Doctrine to State Law Tort Claims* (2009) 55 Loyola L.A. L.Rev. 895, 912-913 ["[a]n analysis of non-antitrust claims under the Noerr-Pennington doctrine is inappropriate because of the doctrine's roots in statutory interpretation," and "[w]ith no Sherman Act to interpret, the doctrine loses applicability"].)

Subscribing to the view that the *Noerr–Pennington* doctrine applies beyond antitrust cases, one California court described the doctrine as "a broad rule of statutory construction, under which laws are construed so as to avoid burdening the constitutional right to petition. [Citation.] In effect, the doctrine immunizes conduct encompassed by the Petition Clause [of the First Amendment]—i.e., legitimate efforts to influence a branch of government—from virtually all forms of civil liability." (*Tichinin v. City of Morgan Hill* (2009) 177 Cal.App.4th 1049, 1064-1065 (*Tichinin*); see also *White v. Lee* (9th Cir. 2000) 227 F.3d 1214, 1231 ["*Noerr-Pennington* is a label for a form of First Amendment protection"].) Some courts have gone further and held that, "in the litigation context, not only petitions sent directly to the court in the course of litigation, but also 'conduct incidental to the prosecution of the suit' is protected" by the *Noerr-Pennington* doctrine, as long as the lawsuit is not a "sham." (*Sosa*, 437 F.3d at pp. 934-935; see *Tichinin*, at pp. 1065, 1068.) Courts have suggested that the doctrine even protects prelitigation settlement demands (*Sosa*, at pp. 935-938) and prelitigation investigation (*Tichinin*, at pp. 1068-1069.) Still, applying the *Noerr-Pennington* doctrine in a personal neighbor dispute like this case would be an extremely broad application of the defense. (See *Cardtoons, L.C. v. Major League Baseball Players Assn.* (10th Cir. 2000) 208 F.3d 885, 891 ["prelitigation threats communicated solely between private parties are [not] afforded immunity from suit by the right to petition guaranteed by the First Amendment"].)

Nevertheless, Bagheri and Fazlelahi argue that the *Noerr-Pennington* doctrine applies in this case and protects the surveillance they conducted on Adeli-Nadjafi and her family because the surveillance was a prelitigation investigation into the merits of the case they ultimately filed. Bagheri and Fazlelahi point to Bagheri's statement, in a declaration supporting the special motion to strike, that he did not videotape Adeli-Nadjafi and her family before June 2009, when Sheriff's deputies recommended that he videotape his neighbor's activities so that he would have a record of their conduct. In a separate declaration Bagheri stated that, following the deputies' advice, he "installed two video cameras in the front of [his] house to record [his] neighbor's activities in

17

preparation for the filing of a lawsuit . . . ." As further evidence that Bagheri and Fazlelahi were contemplating filing a lawsuit at that time, they note that Fazlelahi's April 2009 letter to Tanterra Association CEO Dana Blatt stated that Fazlelahi was "prepared to institute legal action for all [her] damages" if the problems in the neighborhood were not resolved and that she and Bagheri would proceed with filing a lawsuit in Los Angeles Superior Court if Blatt did not respond within 15 days.

The *Noerr-Pennington* doctrine, assuming it applies here at all, does not bar Adeli-Nadjafi's claims as a matter of law. To the extent the doctrine may apply to "'conduct "incidental"'" to a petition," the conduct still must be reasonably necessary or related to the petitioning activity. (*Tichinin*, *supra*, 177 Cal.App.4th at pp. 1065, 1066-1068; see *Freeman v. Lasky, Haas & Cohler* (2005) 410 F.3d 1180, 1184; cf. *Sosa*, *supra*, 437 F.3d at p. 935 [communications between private parties can be protected if they are "sufficiently related" to petitioning activity].) The evidence submitted by Adeli-Nadjafi raises significant factual questions regarding whether all (or any) of Bagheri and Fazlelahi's surveillance activities were reasonably necessary to their petitioning the court through litigation. Even assuming some of the surveillance was warranted to investigate and support contemplated litigation, Adeli-Nadjafi's evidence, which at this stage we accept as true (*Oasis West Realty, LLC v. Goldman*, *supra*, 51 Cal.4th at p. 820), shows that the surveillance was excessive and crossed the line into unreasonable harassment unrelated to any petitioning activity.

*Tichinin*, the principal case cited by Bagheri and Fazlelahi, does not compel a different conclusion. There, on the second prong of a section 425.16 analysis, the court found that the plaintiff made a sufficient prima facie showing that his surveillance of a city official was reasonably related to eventual litigation and therefore protected by the First Amendment right of petition. (See *Tichinin, supra*, 177 Cal.App.4th at p. 1071.) In contrast, Bagheri and Fazlelahi raise the *Noerr-Pennington* doctrine as an affirmative defense, and therefore have the burden of showing that their conduct was reasonably related to petitioning activity. As noted, Adeli-Nadjafi has introduced evidence to negate

18

that conclusion, which gives rise to factual questions that are "far beyond the purpose and scope of the proceedings on the anti-SLAPP motion." (*Id.* at p. 1079.)

## DISPOSITION

The order is affirmed. Respondent is to recover her costs on appeal.


SEGAL, J.

We concur:


PERLUSS, P. J.


ZELON, J.